UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF LOUISIANA

NICKEY BROWN,

       Plaintiff,                      Civil Action No. 09-3793

v.                                       District Judge Lemmon

OIL STATES SKAGIT SMATCO,        Magistrate Judge Shushan

       Defendant.

**MEMORANDUM IN SUPPORT OF DEFENDANT'S
MOTION FOR SANCTIONS**

    Oil States Skagit Smatco, LLC ("Defendant" or "Oil States") submits this memorandum in support of its Motion for Sanctions against Plaintiff, Nickey Brown ("Plaintiff"). For the reasons set forth below, Defendant's motion should be granted.

**BACKGROUND**

    Plaintiff worked as a contract welder at Oil States in Houma, Louisiana, from March 12, 2008, to June 11, 2008. (Complaint at ¶ 2.) In this lawsuit, Plaintiff alleges that he was subjected to racial harassment at Oil States and that he was ultimately constructively discharged as a direct result of the harassment. (Complaint at ¶¶ 3, 6.)

    As demonstrated below, however, Plaintiff has plainly committed perjury – through giving dishonest deposition testimony – during the course of these proceedings. As a result, Oil States

requests that Plaintiff's lawsuit be dismissed and that Oil States be awarded the costs and attorneys' fees it has incurred in connection with this motion.

## ARGUMENT

### I.  Plaintiff Has Plainly Committed Perjury.

In support of his claim that he was constructively discharged by Oil States due to racial harassment and concerns for his personal safety, Plaintiff testified on May 26, 2010, that he left employment with Oil States because of racial harassment and <u>for no other reason</u>. (Oil States Deposition of Plaintiff, attached hereto as Ex. A, at pp. 73, 121, 129.) Specifically, Plaintiff testified that he quit because "this guy calling me all kind of niggers and spitting around me and stuff, and all this stuff, monkeys and stuff...I had enough." (Plaintiff Oil States Dep. at pp. 120-21.) He further elaborated:

> So here come June.  I guess I woke up on the wrong side of the bed that day. All this nigger stuff started up again.  Well, man, let me go. . . I said, "Well, Frank, I'm going, man.  I had enough of this." Frank, "No, no, don't go nowhere, man.  We need you out here...." Next thing I knew, Trent calling me back. "Come on back out here.  We going to get rid of him, terminate him." "No.  That's all right." I just woke up on the wrong side of the bed that time, and I said, "I had enough of it." I said I came to the boiling point where I said, "That's it.  I don't want to be out there no more...." I told Frank, "I quit, man.  I got enough of this nigger stuff, man," stuff like that.

(Plaintiff Oil States Dep. at pp. 73-74.)

During his deposition, Plaintiff was explicitly asked by Oil States' counsel:

> Q.   Was there any other reason, other than what you've already told me, for why you quit?

> A. I don't understand that question.
>
> Q. Did any other reason play a role in why you decided to quit, other than what you've told me today?
>
> A. ***Oh, no, ma'am.***
>
> Q. You did not return to Oil States after Mr. LeBoeuf was fired?
>
> A. No, ma'am, I did not. I was afraid for my life. That's it. ...

(Plaintiff's Oil States Dep. at p. 129) (emphasis added). This testimony, which concerns a material matter in this litigation (the reason for Plaintiff's departure from Oil States), directly and impermissibly contradicts sworn testimony that Plaintiff gave just a few short months earlier.

Specifically, on January 5, 2010, Plaintiff was deposed in a personal injury lawsuit he brought against State Farm related to an automobile accident that occurred while Plaintiff was working at Oil States (the accident occurred in March 2008, early in the Plaintiff's tenure with Oil States). During that deposition, Plaintiff plainly, repeatedly, and confidently testified that he left employment with Oil States "because of the accident." (State Farm Deposition of Plaintiff, attached hereto as Ex. B, at pp. 38, 64-65, 74-75, 87-88, 112-113 (emphasis added.)) More specifically, in his State Farm testimony, Plaintiff testified that, after the wreck in March 2008, he went back to work at Oil States, but then stopped "because my back was killing me. I stayed in pain all the time. I told the boss over there that and stuff like that." (Plaintiff's State Farm Dep. at pp. 36-37.) Plaintiff was then directly asked:

> Q. Did you stop working as a contract welder [at Oil States] . . . because of this accident, or did you stop working as a contractor [*sic*] welder . . . for any other reason?

      A.      Because of the accident.

(Plaintiff's State Farm Dep. at p. 38.)

Plaintiff was then asked:

      Q.      Are those three guys [Oil States' management personnel] going to say the reason you left work was because of this accident?

      A.      Yes, sir. They knew my back was killing me and stuff like that. I was eating Tylenols like M & Ms and stuff trying to keep going and stuff because I had car notes to pay and stuff like that, rent to pay.

(Plaintiff's State Farm Dep. at pp. 74-75.)

      Finally, Plaintiff was asked:

      Q.      They [Oil States] wanted you back full-time [after the automobile accident]?

      A.      They wanted me back full-time.

      Q.      What did you tell them?

      A.      I told them – well, he knew I couldn't do it and stuff because I was walking around and my back was aching me and stuff like that.

      Q.      You told him you couldn't go back full-time?

      A.      He know [*sic*] I couldn't go back full-time. He knew my back was bothering me and stuff like that. He would see me taking Tylenols and stuff like that.

      Q.      Right. So you told him you couldn't go back full-time?

      A.      Right.

(Plaintiff's State Farm Dep. at pp. 87-88.)

      Given the unreconcilable and direct conflict between the Plaintiff's sworn testimony in the two cases, it is clear that Plaintiff has knowingly committed perjury. The Court should therefore dismiss the Plaintiff's Complaint and impose sanctions against him.

**II.     Standard for Dismissal as a Sanction for Perjury.**

It is a federal crime to willfully give false testimony under oath concerning any material matter. 18 U.S.C. § 1621; see United States v. Mosley, 354 Fed. Appx. 191, 197 (5th Cir. 2009). While dismissal is a severe sanction, such a remedy is within the inherent power of the court and is clearly merited here. Chambers v. NASCO, Inc., 501 U.S. 32 (1991); Hull v. Municipality of San Juan, 356 F.3d 98, 99-103 (1st Cir. 2004) (failure to disclose pre-existing injuries in deposition merited dismissal of claims); Newby v. Enron Corp., 302 F.3d 295, 302 (5th Cir. 2002); Coane v. Ferrara Pan Candy Co., 898 F.2d 1030, 1031-33 (5th Cir. 1990); Plasse v. Tyco Elecs. Corp., 448 F. Supp. 2d 302, 308 (D. Mass. 2006) (holding that dismissal is warranted "where a plaintiff deliberately conceals evidence of prior injury in order to enhance damages"). In addition, the Federal Rules of Civil Procedure provide for sanctions to be imposed on litigants who litigate in bad faith. See Fed. R. Civ. Proc. 37(a)(4), 37(c).

**III.    Plaintiff's Claims Should be Dismissed.**

A plain, direct, and inexcusable conflict exists in Plaintiff's testimony. Plaintiff testified during his Oil States deposition that he left his employment with Oil States solely due to racial harassment and the resulting threat to his personal safety. (Plaintiff's Oil States Dep. at pp. 73, 121, 129.) A very short time before his Oil States testimony, however, Plaintiff testified in the State Farm litigation that he did not leave Oil States because of any racial harassment, but rather that he left due to the lingering effects of personal injuries he suffered in an automobile accident that occurred while he was working at Oil States. (Plaintiff's State Farm Dep. at pp. 38, 64-65, 74-75,

87-88, 112-113.) Thus, it is clear that the Plaintiff has egregiously and repeatedly testified falsely about a material fact (his reason for departing Oil States). Plaintiff cannot escape this conclusion given the uncompromising and direct nature of his testimony.

Given the severity of the Plaintiff's misconduct, the fact that it was so blatant, and the fact that the subject testimony goes directly to the heart of Plaintiff's constructive discharge claim, dismissal is clearly appropriate. See, e.g., Hull, 356 F.3d at 99-103; Coane, 898 F.2d at 1033; Pope v. Federal Express Corp., 974 F.2d 982, 984 (8th Cir. 1992) (dismissal of claims "based on the district court's finding that manufactured evidence and perjured testimony had been introduced in an attempt to enhance the case through fraudulent conduct" was not an abuse of the court's discretion).[1]

Hull is instructive and is exactly on point. In Hull, a personal injury plaintiff: (1) failed to disclose prior injuries when specifically asked for such information during his deposition; (2) failed to mention a relevant diagnosis that resulted from one of those injuries, even when asked about that injury after the defense had independently discovered information about it; and (3) withheld medical history information and thereby reduced the likelihood that it would be discovered. Hull, 356 F.3d at 101. As a result of the plaintiff's disingenuous behavior, the Hull court affirmed the lower court's grant of the defendant's motion for sanctions, and also affirmed dismissal of the plaintiff's claims, holding that it may be:

---

[1] The Plaintiff's reason for leaving Oil States is material because if the Plaintiff did not leave Oil States because of harassment (or any action taken by Oil States or any of its employees), his constructive discharge claim fails on its face. See, e.g., McGarry v. University Of Miss. Med. Ctr., 355 Fed. Appx. 853, 858-859 (5th Cir. 2009) (holding that, in order to state claim, constructive discharge plaintiff must show that his "working conditions were so intolerable that a reasonable employee would feel compelled to resign.").

> [E]asy enough to forget details of one's past; and possibly [the plaintiff] did suffer some impairment in the fall affecting his memory. But the information withheld was too patent and too convenient, and the pattern of deceit and grudging concessions too marked, to excuse the misstatements and omissions as merely careless.

Hull, 356 F.3d at 101-102. The court also affirmed the lower court's ruling that awarded the defendant its attorneys' fees and costs as well as the lower court's strong warning of caution directed towards plaintiff's counsel. Id. at 104; see also Elliott v. Bridgestone/Firestone North Am. Tire, LLC, No. 4:05CV1297, 2006 U.S. Dist. LEXIS 8872, at * (E.D. Mo. Mar. 7, 2006) (dismissing claim because plaintiff's "deposition testimony in the earlier suit directly contradicts factual allegations made in . . . this case" and holding that plaintiff's prior testimony "establishes that no factual basis exists to find that [the defendant] has committed an actionable wrong.").

As was the case in Hull, Plaintiff here clearly sought to bolster his constructive discharge claim by not revealing that he suffered previous personal injuries that played a role in his Oil States departure (indeed, based on his prior testimony, those injuries were the sole reason for his departure). Obviously, his motive was to strengthen his case through misleading means. His deceit is particularly egregious given the fact that he gave directly opposing testimony when it suited him and when he stood to benefit monetarily from giving such testimony. Due to this deceit, Plaintiff has forfeited his right to a trial on the matter, as did the plaintiff in Hull, and this lawsuit should therefore be dismissed with prejudice and at Plaintiff's cost.[2] In addition, Oil States should be

---

[2] See also Martin v. DaimlerChrysler Corp., 251 F.3d 691, 692-695 (8th Cir. 2001) (failure to disclose former employers in deposition warranted dismissal of case); Knapp v. Convergys Corp., 209 F.R.D. 439, 440-43 (E.D. Mo. 2002) (willfully withholding employment history and lying during deposition warranted dismissal); Smith v. Cessna Aircraft Co., 124 F.R.D. 103, 110 (D. Md. 1989) (dismissing claim for lost income for lying during discovery).

awarded the attorneys' fees and costs it has incurred as a result of being forced to draft and file this motion.

In the alternative, Oil States requests that the Court take the following actions:

(1) dismiss Plaintiff's claim for constructive discharge, based on his perjured testimony and attempt to conceal the true reason for his departure from Oil States;

(2) award Oil States' its legal fees and costs associated with the drafting and filing of this motion; or

(3) issue a finding, to be admitted into evidence at trial, that the Plaintiff was dishonest in this litigation and attempted to perpetrate a fraud on Oil States and the Court.

## **CONCLUSION**

For all of the foregoing reasons, dismissal of this lawsuit is an appropriate sanction for Plaintiff's willful fraud upon the Court. The rules require honesty, candor, and good faith in legal proceedings. Dishonest testimony strikes at the very heart of the judicial system and violates the procedural rules enacted to protect that system. The Court should therefore dismiss Plaintiff's claims with prejudice and at his cost as a sanction for his perjured deposition testimony.

Respectfully submitted this 23rd day of July, 2010.

/s/ Rachel E. Linzy
SAMUEL ZURIK, III (Bar No. 24716)
RACHEL E. LINZY (Bar No. 29317)
The Kullman Firm
1600 Energy Centre, 1100 Poydras Street
New Orleans, LA 70163
Telephone: (504) 524-4162

**COUNSEL FOR DEFENDANT
OIL STATES SKAGIT SMATCO**